UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH A. ELLIS,                                    Case No. 12-11230

       Plaintiff,                             Gerald E. Rosen
v.                                                 United States District Judge

COMMISSIONER OF SOCIAL SECURITY,                   Michael Hluchaniuk
                                                   United States Magistrate Judge

       Defendant.
_____/

**REPORT AND RECOMMENDATION:**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 8, 11)**

## I.     PROCEDURAL HISTORY

      A.     Proceedings in this Court

On March 20, 2012, plaintiff filed the instant suit seeking judicial review of

the Commissioner's unfavorable decision disallowing benefits.  (Dkt. 1).  Pursuant

to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge Gerald E.

Rosen referred this matter to the undersigned for the purpose of reviewing the

Commissioner's decision denying plaintiff's claim for a period of disability,

disability insurance, and supplemental security income benefits.  (Dkt. 2).  This

matter is before the Court on cross-motions for summary judgment.  (Dkt. 8, 11).

      B.     Administrative Proceedings

Plaintiff filed the instant claims on April 1, 2009, alleging that she became

unable to work on December 1, 2004. (Dkt. 5-3, Pg ID 102). The claim was

initially disapproved by the Commissioner on September 17, 2009. (Dkt. 5-3, Pg

ID 38). Plaintiff requested a hearing and on June 11, 2011, plaintiff appeared via

video hearing with counsel before Administrative Law Judge (ALJ) Paul R.

Armstrong, who considered the case *de novo*. In a decision dated August 20,

2010, the ALJ found that plaintiff was not disabled. (Dkt. 5-3, Pg ID 102-115).

Plaintiff requested a review of this decision. (Dkt. 5-3, Pg ID 30). The ALJ's

decision became the final decision of the Commissioner when, after the review of

additional exhibits,[1] the Appeals Council, on January 27, 2012, denied plaintiff's

request for review. (Dkt. 5-3, Pg ID 20-22); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that

plaintiff's motion for summary judgment be **GRANTED IN PART AND**

**DENIED IN PART**, that defendant's motion for summary judgment be

**GRANTED IN PART AND DENIED IN PART**, and that the findings of the

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

Commissioner be **AFFIRMED IN PART AND REVERSED IN PART**, and that
this matter be **REMANDED** for further proceedings.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff was 43 years of age at the time of the most recent administrative
hearing.  (Dkt. 5-3, Pg ID 102).  Plaintiff's has past relevant work history as a
hairstylist/braider.  (Dkt. 5-3, Pg ID 113).  In denying plaintiff's claims, defendant
Commissioner considered headaches, chronic pain in the lower back, arm, and
knees along with affective disorder.  (Dkt. 5-3, Pg ID 104).

The ALJ applied the five-step disability analysis to plaintiff's claim and
found at step one that plaintiff had not engaged in substantial gainful activity since
December 1, 2004, the alleged onset date.  (Dkt. 5-3, Pg ID 40).  At step two, the
ALJ found that plaintiff's headaches, chronic pain in the lower back, arm, and
knees along with affective disorder were "severe" within the meaning of the
second sequential step.  *Id.*  At step three, the ALJ found no evidence that
plaintiff's combination of impairments met or equaled one of the listings in the
regulations.  (Dkt. 5-3, Pg ID 104).  At step four, the ALJ found plaintiff unable to
perform any past relevant work, but could perform simple, unskilled light work,
avoiding work requiring more than superficial contact with supervisors, coworkers
and the general public.  (Dkt. 5-3, Pg ID 107).  At step five, the ALJ denied

plaintiff benefits because plaintiff could perform a significant number of jobs available in the national economy.  (Dkt. 5-3, Pg ID 113).

      B.      <u>Plaintiff's Claims of Error</u>

Plaintiff argues that the ALJ's RFC assessment and hypothetical posted to the vocational expert failed to account for postural and nonexertional limitations, and therefore, are inadequate.  According to plaintiff, the ALJ relied on the opinions of the Drs. Ahmed and Blake, two consulting examiners, but ignored their findings regarding plaintiff's postural limitations and nonexertional limitations.  Specifically, Dr. Ahmed found that plaintiff was limited to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.  (Tr. 355).  However the RFC and the hypothetical question did not include these limitations.  Thus, there was no discussion with the vocational expert about the impact of these limitations on the occupational base.

In his recitation of the mental limitations faced by plaintiff, the ALJ noted that she had moderate difficulties in social functioning (Tr. 86), which plaintiff acknowledges would at least ostensibly be covered by the ALJ's limitation to work with no more than superficial contact with supervisors, coworkers, and the general public.  (Tr. 87).  However, the ALJ further concluded that plaintiff had moderate limitations in other areas:

           With regard to concentration, persistence or pace, the

claimant has moderate difficulties. The claimant's
records reveal that the claimant has alleged experiencing
a wide range of symptoms related to her affective
disorder, such as flashbacks, nightmares, depression,
lack of motivation, mood swings, isolative behavior,
crying spells, disturbed sleep and appetite, feelings of
helplessness and hopelessness, paranoid ideation
memory loss, and difficulties with concentration and
focus (Ex. 4F at 1-3, Ex. 11F at 1-3). At her July 2009
consultative psychiatric examination, the claimant was
noted to have impairments in her abstract thinking and
recent memory (Ex. 11F at 3, 4). During another July
2009 examination, the claimant was observed to have
paranoid ideation and command hallucinations (Ex. 18F
at 21).

(Tr. 86).  Dr. Blake, the psychological consultant found most persuasive by the

ALJ (Tr. 88), further stated that plaintiff would be moderately limited in her ability

to carry out detailed instructions, maintain attention and concentration for

extended periods, work in close proximity to others, complete a normal workday

or workweek without interruptions from psychologically-based symptoms, interact

appropriately with the general public, respond appropriately to changes in her

work setting, and set realistic goals and make independent plans.  (Tr. 349-350).

According to plaintiff, these limitations are definitely not reflected in the ALJ's

RFC assessment (Tr. 87), which limits plaintiff only to "simple" work that requires

no more than "superficial contact with supervisors, coworkers, and the general

public." (Tr. 87).  Plaintiff also contends that these limitations are not accounted

for in the hypothetical question posed to the VE, which invoked the same

limitations as in the RFC assessment.  (Tr. 73).

      C.    <u>Commissioner's Motion for Summary Judgment</u>

According to the Commissioner, the ALJ considered all of the evidence of record and, as the finder of fact, reasonably concluded that plaintiff could perform a simple, unskilled light work that involved no more than superficial contact with supervisors, coworkers, and the general public.  (Tr. 87).  Contrary to plaintiff's argument, the Commissioner contends that the ALJ's residual functional capacity is substantially supported by the evidence of record with regard to her nonexertional postural and mental limitations.  And, the relevant medical evidence of record supports the ALJ's residual functional capacity assessment.

As to plaintiff's postural limitations, the Commissioner argues that the evidence of record shows that plaintiff had negative lumbar spine x-rays.  (Tr. 334). Dr. Prasad reported that Plaintiff had no motor or sensory deficits in her extremities, had no evidence of tenderness or swelling in her right knee, had normal gait without an assistive device, did not stumble or fall when walking, could heel and toe walk, and got on and off the examination table without difficulty.  (Tr. 249-50, 329-31).  Dr. Hasan noted that plaintiff had normal posture and gait and could take care of her basic needs.  (Tr. 245, 325).  With regard to plaintiff's mental impairments, the Commissioner says she received infrequent treatment and had several gaps in treatment (months at a time) and was

noncompliant with her medication prescriptions. (Tr. 302, 380, 389). When compliant with treatment, plaintiff was pleasant, cooperative, and mentally healthy. (Tr. 392, 394, 396, 452). Additionally, the Commissioner points out that plaintiff had never required psychiatric hospitalization. (Tr. 244). Although plaintiff had trust issues related to friendships, she reported celebrating holidays, birthdays, and special events with family members. (Tr. 364-65). The medical records reveal that she had a boyfriend (Tr. 305) and that a family friend had dropped her off at one of her appointments. (Tr. 244).

The Commissioner also contends that the medical opinions of record support the ALJ's residual functional capacity assessment. Indeed, Dr. Ahmed, a state agency physician, reviewed the evidence of record, and opined that plaintiff could perform a range of light work that involved occasional postural activities. (Tr. 355). Dr. Blake, a state agency psychologist opined that plaintiff had no more than moderate mental limitations. (Tr. 349-50). The ALJ properly relied on the opinions of Drs. Ahmed and Blake because, as the regulations provide, state agency medical consultants are "highly qualified" physicians and "experts" in the Social Security disability evaluations. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). According to the Commissioner, it is notable that Drs. Ahmed and Blake never opined that plaintiff was disabled. (Tr. 336-51, 353-60). In fact, both doctors opined that plaintiff could perform work despite her mental and

physical impairments.  (Tr. 351, 360).  The ALJ properly evaluated Dr. Ahmed's

opinion giving his opinion weight, and incorporating some of his limitations into

his residual functional capacity assessment.  (Tr. 88).  The ALJ also properly gave

Dr. Blake's expert opinion significant weight and incorporated it into his residual

functional capacity assessment.  (Tr. 88).

Contrary to plaintiff's argument, the Commissioner contends that the ALJ

did not have to adopt the opinions of Drs. Ahmed and Blake verbatim and use

their opinions as his residual functional capacity assessment.  Rather, the ALJ has

the sole responsibility for formulating the residual functional capacity and does

not need a separate medical opinion to justify his residual functional capacity

assessment.  20 C.F.R. §§ 404.1545, 416.945.  Accordingly, the ALJ properly

evaluated the medical opinions when formulating his residual functional capacity

assessment.

Finally, despite Plaintiff's reliance on *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d

504 (6th Cir. 2010), this district has found that a moderate impairment in

concentration, persistence, and pace does not necessarily preclude simple,

unskilled work.  *Seach v. Comm'r of Soc. Sec.*, 2011 WL 1792666, *8 (E.D. Mich.

2011); *see also Latarte v. Comm'r of Soc. Sec.*, 2009 WL 1044836, *3 (E.D.

Mich.2009) (stating that "unskilled work, by definition, is limited to

understanding, remembering and carrying out only simple instructions and

requiring little, if any, judgment" ); *Chafin v. Comm'r of Soc. Sec.*, 2005 WL 994577, *2, 4 (E.D. Mich. 2005) (finding that the ALJ's hypothetical question addressed plaintiff's mental deficiencies sufficiently by limiting him to "simple, unskilled work" and although he had "moderate deficiencies of concentration, persistence, or pace, he could nonetheless perform the work of an assembler, packager, inspector, and security monitor).  Thus, according to the Commissioner, the ALJ's residual functional capacity properly took into account plaintiff's credible mental impairments.

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final

administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may ... consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's

testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole,

Report and Recommendation
Cross-Motions for Summary Judgment
*Ellis v. Comm'r*; Case No. 12-11230

including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program (DIB) of Title II (42 U.S.C. §§ 401 *et seq.*) and the Supplemental Security Income Program (SSI) of Title XVI (42 U.S.C. §§ 1381 *et seq.*). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are

available to poverty stricken adults and children who become disabled.  F. Bloch,

Federal Disability Law and Practice § 1.1 (1984).  While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who

have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).

"Disability" means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined

through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in
> substantial gainful activity, benefits are denied without
> further analysis.

> Step Two:  If the claimant does not have a severe
> impairment or combination of impairments, that
> "significantly limits ... physical or mental ability to do
> basic work activities," benefits are denied without
> further analysis.

> Step Three:  If plaintiff is not performing substantial
> gainful activity, has a severe impairment that is expected
> to last for at least twelve months, and the severe
> impairment meets or equals one of the impairments listed
> in the regulations, the claimant is conclusively presumed
> to be disabled regardless of age, education or work
> experience.

Report and Recommendation
Cross-Motions for Summary Judgment
*Ellis v. Comm'r*; Case No. 12-11230

Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the

14

decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

      C.     <u>Analysis and Conclusions</u>

          1.     Mental Impairment

Whether a plaintiff's moderate impairment of concentration, persistence, or pace was properly accounted for in the hypothetical question using terms such as "simple," "routine," and "unskilled" – was ably analyzed in a decision by Magistrate Judge Laurie Michelson.  *Taylor v. Comm'r*, 2011 WL 2682682 (E.D. Mich. 2011), adopted as the decision of the Court via order dated July 11, 2011. Judge Michelson began her analysis by noting that case law has resolved this issue in a variety of seemingly inconsistent ways.  *Id.* at *6, n. 3 and n. 4 (collecting cases).  Judge Michelson acknowledged that "[i]n analyzing this case law, the Court agrees that a hypothetical simply limiting a claimant to unskilled work may, in some instances, fail to capture a claimant's moderate limitation in concentration, persistence, or pace because the difficulty of a task does not always equate with the difficulty of staying on task."  *Id.* at *7.  She also found, however, "that there is no bright-line rule requiring remand whenever an ALJ's hypothetical includes a limitation of 'unskilled work' but excludes a moderate limitation in

concentration. Rather, this Court must look at the record as a whole and determine

if substantial evidence supports the ALJ's decision." *Id.*

In undertaking this examination, Judge Michelson pointed to a case nearly

identical to the one before her:

> Taken in isolation, the hypothetical limitations
> consisting of "[s]imple routine tasks in a low stress
> environment" and "minimal changes in the work place
> setting" might appear inadequate to account for
> "moderate" concentrational and pacing deficiencies.
> However, the record as a whole indicates that the
> hypothetical question and the ALJ's finding of
> "moderate" limitations findings are not incompatible.

*Hess v. Comm'r of Soc. Sec.*, 2008 WL 2478325, at *7 (E.D. Mich. 2008). Similar

to *Hess* and *Taylor*, the PRTF in this case finds that plaintiff had moderate

difficulties in maintaining concentration, persistence, or pace. (Dkt. 5-13, Pg ID

644). Also similar to *Hess* and *Taylor*, the Mental Residual Functional Capacity

Assessment (Dkt. 5-10, Pg ID 376-378), found plaintiff to be moderately limited

in eight of the 20 categories; specifically, the ability to understand and remember

detailed instructions, the ability to carry out detailed instructions, the ability to

maintain attention and concentration for extended periods, the ability to work in

coordination with or proximity to others without being distracted by them, the

ability to complete a normal work-day and workweek without interruptions from

psychological based symptoms and to perform at a consistent pace without an

unreasonable number and length of rest periods, the ability to interact appropriately with the public, the ability to respond appropriately to changes in the work setting, and the ability to set realistic goals or make plans independently of others. *Id*. In *Hess* and *Taylor*, the courts both concluded that because the ALJ relied on the opinions in the PRTF to reach his conclusion that the plaintiff had moderate limitations in concentration, persistence, and pace, it was reasonable for the ALJ to also rely on the ultimate conclusion in the PRTF that the plaintiff could perform unskilled work on a sustained basis. *Taylor*, at *8.

Here, the PRTF also concluded that plaintiff could perform "sustained work activity" despite her moderate impairments of the ability to maintain concentration and persistence and mild to moderate impairment in understanding and memory. (Dkt. 5-10, Pg ID 378).   Thus, just as in *Taylor* and *Hess*, the ALJ reasonably relied on the ultimate opinion that plaintiff was capable of working and there is no basis for the ALJ to have adopted or relied on only certain parts of the PRTF, while ignoring others.   *Hess*, at *8 ("Plaintiff's argument for the selective adoption of Dr. Marshall's 'moderate' limitations without considering the ultimate conclusion would amount to a distortion of the record."); *see also Lewicki v. Comm'r of Soc. Sec.*, 2010 WL 3905375, *3 (E.D. Mich. 2010) ("Plaintiff's objection ignores a particularly compelling piece of evidence provided by the same state psychologist who diagnosed Plaintiff's mental limitations in the first

Report and Recommendation
Cross-Motions for Summary Judgment
*Ellis v. Comm'r*; Case No. 12-11230

place.  The psychologist diagnosed moderate mental impairments, but also

concluded that Plaintiff's mental limitations would not prohibit him from

performing simple, unskilled work.").  Additionally, the ALJ did not simply limit

plaintiff to "unskilled work."  Rather, the ALJ accounted for the plaintiff's specific

limitations in the PRTF by limiting plaintiff to "simple, unskilled light work"

except that she should "avoid work requiring more than superficial contact with

supervisors, coworkers, and the general public."  (Dkt. 5-2, Pg ID 91-92; 107); *see*

*Taylor*, at *9 (A reasonable interpretation of the opinions as a whole in the PRTF

indicate that the concentration limitations identified do not preclude consistent or

sustained concentration in a stable, simple, and repetitive task setting).[2]

### 2.     Postural Limitations

Here, the ALJ specifically recognized and concluded that plaintiff was

limited to only occasional climbing, balancing, stooping, kneeling, crouching, and

crawling.  (Tr. 355).  However the RFC and the hypothetical question did not

include these limitations.  Thus, there was no discussion with the vocational expert

about the impact of these limitations on the occupational base.  "Nonexertional

---

[2]  Just as in *Taylor*, this case is distinguishable from *Ealy v. Comm'r*, 594 F.3.d 504 (6th
Cir. 2010) in which the Sixth Circuit found the ALJ's hypothetical to be deficient because it
failed to include the limitation from the state DDS consultant that the plaintiff was only able to
sustain attention to complete tasks in two hour segments over an eight hour day where speed was
not critical. Here, just as *Taylor*, (and unlike the circumstances in *Ealy*) the consulting physician
substantially reduced the significance of the PRTF limitations by concluding that the plaintiff
could perform work activity on a sustained basis.

limitations can affect the abilities to reach; to seize, hold, grasp, or turn an object (handle); to bend the legs alone (kneel); to bend the spine alone (stoop) or bend both the spine and legs (crouch)." *See* SSR 85-15, 1985 WL 56857 (S.S.A. 1985). As recognized in SSR 85-15, nonexertional impairments may or may not affect a person's capacity to carry out the primary strength requirements of jobs, and they may or may not significantly narrow the range of work a person can do. While it is true that jobs that can be performed by persons with *solely* nonexertional limitations cut across the categories of sedentary to heavy work, (*id.*), the ALJ did not find that plaintiff had *solely* nonexertional limitations in this case. The VE's testimony, on which the ALJ relied, is "tainted by the omission of key postural limitations in the hypothetical question." *Ritter v. Comm'r of Soc. Sec.*, 2010 WL 1064415, *7 (E.D. Mich. 2010), aff'd, 2010 WL 1064411, citing *Teverbaugh v. Comm'r of Soc. Sec.*, 258 F.Supp.2d 702, 706 (E.D. Mich. 2003). The undersigned concludes that the ALJ's failure to include plaintiff's postural limitations in the hypothetical question constitutes reversible error.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, that defendant's motion for summary judgment be **GRANTED IN PART AND DENIED IN PART**, and that the findings of the

Commissioner be **AFFIRMED IN PART AND REVERSED IN PART**, and that this matter be **REMANDED** for further proceedings.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: February 11, 2013                    s/Michael Hluchaniuk
                                           Michael Hluchaniuk
                                           United States Magistrate Judge

**CERTIFICATE OF SERVICE**

      I certify that on February 11, 2013, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: Norton J. Cohen, Andrew J. Lievense, AUSA, and Meghan O'Callaghan, Social Security Administration.

                                           s/Tammy Hallwood_____
                                           Case Manager
                                           (810) 341-7887
                                           tammy_hallwood@mied.uscourts.gov